Howard Rubinstein (Fla. SBN: 104108)
*howardr@pdq.net*
Attorney at Law
914 Waters Avenue, Suite 20
Aspen, Colorado 81611
(832) 715-2788
*(To apply as counsel pro hac vice)*

Harold M. Hewell (Cal. SBN: 171210)
*hmhewell@hewell-lawfirm.com*
HEWELL LAW FIRM
105 West F Street, Second Floor
San Diego, California 92101
(619) 235-6854/(888) 298-0177 (f)

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACK AARONSON, as an individual and on behalf of all others similarly situated,<br><br>        *Plaintiff,*<br><br>*vs.*<br><br><br><br><br><br>VITAL PHARMACEUTICALS, INC, a Florida corporation, doing business under the trademark **VPX**,<br><br>        *Defendant.* | Civil Action No 09 CV 1 333 W<br><br>**COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES**<br><br>*Class Action*<br>*Jury Trial Requested* |

**COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES
Page 1 of 23**

Plaintiff, by and through counsel, files this Complaint on behalf of himself and all others similarly situated, and alleges against defendant, Vital Pharmaceuticals, Inc, which does business under the trade mark VPX ("Defendant"), as follows.

## I. INTRODUCTION

1.      Defendant sells a variety of dietary supplements which it promotes as "fat burners" and "energy enhancers" under the brand name of Redline®. ("Product)"

2.      Several adverse reactions have been reported from consumers who have purchased and ingested the Product, including, but not limited to, chills, excessive sweating, vomiting, convulsions, chest pains, and rapid heartbeat. Several consumers of the Product have been hospitalized after consuming the Product.

3.      Plaintiff contends that Defendant has failed to adequately warn consumers of the dangers and health risks associated with using the Product, and that future adverse health events, including possibly death, could result if the Product if consumers are not adequately warned of these dangers and health risks. Plaintiff also contends that Defendant is deceptively marketing the Product as having approved and unique drug-quality characteristics.

## II. PARTIES

4.      Plaintiff Zack Aaronson is an individual who resides in, and is a citizen of, the State of California. He respectfully requests a jury trial on claims asserting damages.

5.      Defendant Vital Pharmaceuticals, Inc. is a Florida corporation doing business as, and selling the Product under, the trademark name of VPX. Defendant lists with the Florida Secretary of State a principle place of business located at 5751 S.W. 41st Street, Suite 300, Davie Florida 33331, and a registered agent for serviced of process by the name of John H. Owoc, also at 15751 S.W. 41st Street Suite 300 Davie Florida 33331. For purposes of diversity, Defendant is a "citizen" of the State of Florida. Defendant owns and maintains an interactive website, http://www.vpxsports.com/sports-nutrition-supplements/fat-loss-energy/redline-rtd.aspx, that is accessible to citizens of this judicial district, and which advertises, promotes and markets the Product in this

jurisdiction and in this judicial district.

6.      Plaintiff is informed and believes, and thereon allege, that at all times herein mentioned, that Defendant and its employees, subsidiaries, affiliates and other related entities, were, at all times relevant herein, agents, servants and employees of each other, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment.

7.      Whenever reference in this Complaint is made to any act or transaction of Defendant such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of Defendant while actively engaged in the scope of their duties.

8.      All allegations herein are based on information and belief and/or are likely to have evidentiary support after reasonable opportunity for further investigation and discovery.

### III. VENUE AND JURISDICTION

9.      This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the Class in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5). Plaintiff is a citizen of the State of California, and as set forth above, Defendant can be considered a citizen of the State of Florida for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff allege that more than two-thirds of all of the members of the proposed Plaintiff Class in the aggregate are citizens of a state

other than California where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

10. Venue in this district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth above, Defendant conduct business within, may be found in, and are subject to personal jurisdiction in this district.

## IV. FACTUAL ALLEGATIONS

11. As set forth above, Defendant sells a variety Redline® energy drinks and other forms of the Product under the names: REDLINE® RTD, REDLINE PRINCESS® REDLINE Power Rush® REDLINE Xtreme® REDLINE® Concentrate and REDLINE® GEL CAPS.

12. The Product contains the following ingredients: anhydrous caffeine, evodiamine, tyrosine, yerba mate extract, green tea extract, 5-HTP, vinpocetine, and yohimbine. Certain of ingredients are notable for the effects they have been found to cause in humans, effects that go beyond the Product's goal of energy enhancement and weight loss:

   a. Yohimbine is a stimulant which has been used in the treatment of posttraumatic stress disorder to aid recall of traumatic memories.[1] It can be dangerous if used in excessive amounts; side effects at certain doses include rapid heart rate, high blood pressure, overstimulation, insomnia, panic attacks, hallucinations, headaches, dizziness, and skin flushing.[2]

   b. Vinpocetine is a semisynthetic derivative alkaloid of vincamine,[3] an extract

---

[1] Approaches to the treatment of PTSD. http://www.traumatherapie.de/users/vanderkolk/kolk2.html.

[2] Prescription for Nutritional Healing, fourth edition, Phyllis A. Balch, CNC.

[3] IUPAC-IUBMB Joint Commission on Biochemical Nomenclature (1983). "Nomenclature and Symbolism for Amino Acids and Peptides". Recommendations on Organic & Biochemical Nomenclature, Symbols & Terminology.

from the periwinkle (plant) Vinca minor. It has been reported to have cerebral blood-flow enhancing[4] and neuroprotective effects,[5] and is used in Eastern Europe to treat cerebrovascular disorders and age-related memory impairment.[6] Side effects include nausea, dizziness, anxiety, facial flushing, insomnia, headache, drowsiness and dry mouth; it may also cause a temporary drop in blood pressure.[7]

   c. Tyrosine is one of the amino acids the body uses to synthesize proteins. In the adrenal gland, it is converted to levodopa. Tyrosine increases plasma neurotransmitter levels (particularly dopamine and norepinephrine)[8] but has little if any effect on mood.[9]

---

http://www.chem.qmul.ac.uk/iupac/AminoAcid/. Retrieved on 2007-05-17.

[4] Leathwood PD, Pollet P (1982). "Diet-induced mood changes in normal populations". Journal of psychiatric research (2): 147–54. Doi:10.1016/0022-3956(82)90016-4. PMID 6764931. Journal of Neurological Sciences 2005 Mar 15; 229-230:275-84. Epub 2005 Jan 8. PMID: 15760651.

[5] Dézsi L, Kis-Varga I, Nagy J, Komlódi Z, Kárpáti E. "[Neuroprotective effects of vinpocetine in vivo and in vitro. Apovincaminic acid derivatives as potential therapeutic tools in ischemic stroke]." Acta Pharmaceutica Hungarica 2002; 72(2):84-91. 12498034.

[6] "Vinpocetine. Monograph." Alternative Medicine Review 2002 Jon's(3):240-3, pp. 240. PMID: 12126465.

[7] http://altmedicine.about.com/od/herbsupplementguide/a/vinpocetine.htm.

[8] Rasmussen DD, Ishizuka B, Quigley ME, Yen SS (1983). "Effects of tyrosine and tryptophan ingestion on plasma catecholamine and 3,4-dihydroxyphenylacetic acid concentrations". J. Clin. Endocrinol. Metab. (4): 760–3. PMID 6885965.

[9] Leathwood PD, Pollet P (1982). "Diet-induced mood changes in normal populations". Journal of psychiatric research (2): 147–54. doi:10.1016/0022-3956(82)90016-4. PMID 676493; Deijen JB, Orlebeke JF (1994). "Effect of tyrosine on cognitive function and blood pressure under stress". Brain Res. Bull. (3): 319–23. doi:10.1016/0361-9230(94)90200-3. PMID 8293316; Lieberman HR, Corkin S, Spring BJ, Wurtman RJ, Growdon JH (1985). "The effects of dietary neurotransmitter precursors on human behavior". Am J Clin Nutr. (2): 366–370. PMID 4025206.

d. 5-Hydroxytryptophan (or 5-HTP) is a naturally occurring amino acid marketed in the United States and other countries as a dietary supplement for use as an antidepressant, appetite suppressant, and sleep aid. 5-HTP has not been thoroughly studied in a clinical setting, therefore, possible side effects and drug interactions are not well known. Evidence indicates possible side effects that include heart valve damage or disease.[10]

13.     Redline is sold in convenience stores and other outlets, as well as online. In stores, it is sold alongside other energy drinks, canned iced teas and soft drinks. The ready-to-drink variety actually contains two doses of the Product, though this is not prominently displayed on the label. As a consequence, consumers are led to consume twice the recommended amount of the Product at one time (and Defendant thus sells more of the Product than it would if sold in smaller, single dose containers).

14.     As noted above, persons who have consumed the Product have reported a range of adverse side effects, including, but not limited to, chills, excessive sweating, vomiting, convulsions, chest pains, and rapid heartbeat. California's poison control center toxicologists have reported similar problems among people who drank Redline. One analysis of ten Redline intoxication calls revealed that the patients, nine of whom were male, ranged in ages from 13 to 53. Some had ingested Redline's powdered concentrate, which contains 250 milligrams of caffeine per teaspoon; six had consumed just one 8-ounce can of the ready-to-drink variety. Complaints included nausea, vomiting, rapid heartbeat, hypertension, tremors, dizziness and chest pain.

15.     Defendant's warning on Product labeling and elsewhere states:

WARNING: NOT FOR USE BY INDIVIDUALS UNDER THE AGE OF 18 YEARS. DO NOT USE IF PREGNANT OR NURSING. Consult a physician or licensed qualified health care professional before using this product if you have, or have a family history of, heart disease, thyroid disease, diabetes, high blood pressure, depression or other psychiatric condition, glaucoma, difficulty in urinating, prostate enlargement, or

---

[10] Id.

seizure disorder, or if you are using a monoamine oxidase inhibitor (MAOI) or any other dietary supplement, prescription drug, or over-the-counter drug containing ephedrine, pseudoephedrine, or phenylpropanolamine (ingredients found in certain allergy, asthma, cough or cold, and weight control products). Do not exceed recommended serving. Exceeding recommended serving may cause adverse health effects. Discontinue use and call a physician or licensed qualified health care professional immediately if you experience rapid heartbeat, dizziness, severe headache, shortness of breath, or other similar symptoms. The consumer assumes total liability if this product is used in a manner inconsistent with label guidelines. Do not use for weight reduction. KEEP OUT OF REACH OF CHILDREN.

16.     Plaintiff contends that Defendant has failed to adequately warn consumers of all the Product's possible side effects and health risks. Defendant has engaged in an extensive national marketing and advertising campaign that includes, but is not limited to, print, electronic media, television, and the internet to promote and sell the Product as a safe and healthy dietary supplement – a "UNIVERSITY RESEARCH PROVEN BREAKTHROUGH"[11] - that enhances energy and promotes weight loss. As Defendant states on its website:

> This freaky scientific breakthrough is the first physique-transforming matrix to coax your body to burn fat through the "shivering response." It is a physiological fact that when you shiver, your body releases a large amount of stored body fat in an attempt to bring body temperature back to normal. Redline® induces this effect quite efficiently. However, the power of Redline® does not stop there, as its radical combination of novel ingredients will also have you sweating up a thermogenic storm, and thus burning fat through yet another unique mechanism.[12]

17.     Plaintiff alleges that the warning above is insufficient and is overshadowed by Defendant's extensive national campaign promoting the purported benefits of the Product.

---

[11]     http://www.vpxsports.com/sports-nutrition-supplements/fat-loss-energy/redline-rtd.aspx

[12] Id.

18.     Plaintiff alleges that, as a result, many purchasers of the Product are unaware of the potential dangers and risks associated with use of the Product and its ingredients, and that Defendant is not using all means reasonably available to make those dangers and risks known to consumers.

19.     Plaintiff also contends that Defendant makes claims that the Product affects the structure and function of the body, and therefore qualifies as a drug within the meaning of Section 201(g)[13] of the Federal Food, Drug, and Cosmetic Act ("FDCA").[14] Act. Such products are considered drugs when their intended use is established by structure/function claims, such as those that appear on Defendant's website[15] and its other labeling and advertising, and they are not generally recognized among qualified experts "as safe and effective for use under the conditions prescribed, recommended, or suggested."[16] As such, the claims made for the Product subject it to the requirements for

---

[13] 21 U.S.C. § 321(g)(1).

[14] Codified at 21 U.S.C. §§ 301, et seq., with implementing regulations found at 21 C.F.R. §§ 1.1, et seq. Federal provisions relating to new drug applications, premarket approval applications and postmarketing requirements have been incorporated by reference into California law. See Cal. Health and Safety Code §110110(a)   ("All regulations relating to (1) new drug applications, except for abbreviated new drug applications, adopted pursuant to Section 505 of the federal act (21 U.S.C. Sec. 355), (2) applications for premarket approval of new devices, adopted pursuant to Section 515 of the federal act (21 U.S.C. Sec.  360e), (3) postmarketing reports, recordkeeping, and other postapproval requirements for approved new drug applications or approved new device premarket approval applications, adopted pursuant to the federal act, that are in effect on January 1, 1993, or that are adopted on or after that date, shall be the new drug and new device application regulations of this state.") By incorporating the federal rules, California's regulation in this area parallels the federal provisions, and does not conflict with, intrude upon, or pose an obstacle to the enforcement of the federal statutes and regulations.

[15] "This freaky scientific breakthrough is the first physique-transforming matrix to coax your body to burn fat...when you shiver, your body releases a large amount of stored body fat...Redline® induces this effect...[the Product] will also have you sweating up a thermogenic storm, and thus burning fat...." See note 11.

[16] 21 U.S.C. § 321(p).

new drugs pursuant to Section 201(p)[17] of the FDCA. Under Section 505[18] of the FDCA, a "new drug" may not be introduced or delivered for introduction into interstate commerce unless an FDA-approved new drug application is in effect for such drug. As Defendant has not submitted such an application for the Product, its distribution in the U.S. violates Section 505 of the FDCA. The federal Food and Drug Administration ("FDA") sent a warning letter to ThermoLife International[19] regarding similar claims in 2002. A true and correct copy of that letter is attached hereto as Exhibit "A" and incorporated by reference (copy is highlighted for reference).

20.     Plaintiff has purchased the Product several times in the year preceding the filing of this action, and has used it for its intended and foreseeable purposes. He has since, however, learned of the risks and side effects that have been linked to the Product, and has ceased buying and ingesting it.

21.     Defendant presents itself as a reputable, reliable and safe manufacturer of dietary supplements, and Plaintiff relied on this and other representations by Defendant in purchasing and using the Product. However, Plaintiff now contends that Defendant placed profit before safety in the design, testing, manufacture, assembly, development, marketing and sale of the Product, and that it engaged in deceptive marketing of the Product. Plaintiff contends he has suffered damages as the result of the foregoing, in that, among other things, he spent money on a Product that was not safe and therefore lacked the value he had been led to believe the Product had, and for which he paid in the purchase price of the Product. He would not have purchased the Product had he known the true facts about it.

---

[17] Id.

[18] 21 U.S.C. § 355(a).

[19]     http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/EnforcementActivitiesbyFDA/WarningLettersandNoticeofViolationLetterstoPharmaceuticalCompanies/UCM164565.pdf.

## V. CLASS ALLEGATIONS

22.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

23.     Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and seeks certification of the claims and certain issues in this action pursuant to the applicable provisions of Rule 23, on behalf of all persons who, within the four years preceding the filing of this Complaint ("Class Period") purchased the Product for personal use ("Class").

24.     Defendant's practices and omissions were applied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class. All members of the putative Class were and are similarly affected by having purchased and used the Product for its intended and foreseeable purpose, and the relief sought herein is for the benefit of Plaintiff and members of the putative Class.

25.     Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Class is so numerous that joinder of all members would be impractical. Based on the annual sales of the Product and the popularity of the Product, it is apparent that the number of consumers of the Product would at least be in the many thousands, thereby making joinder impossible.

26.     Questions of law and fact common to the Plaintiff Class exist that predominate over questions affecting only individual members, including, inter alia:

      a.  Whether Defendant's practices in connection with the promotion, marketing, advertising and sale of the Product were deceptive, unlawful or unfair in any respect, thereby violating California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.;

      b.  Whether Defendant's practices in connection with the promotion, marketing, advertising and sale of the Product were deceptive in any respect, thereby violating California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.;

c. Whether Defendant fraudulently concealed the dangers and health risks associated with the Product;

d. Whether Defendant breached implied warranties in its sale of the Product, thereby causing harm to Plaintiff and members of the Proposed Class;

e. Whether Defendant breached express warranties in its sale of the Product, thereby causing harm to Plaintiff and members of the Class;

f. Whether Defendant was negligent in its manufacture, production, distribution, promotion, marketing and advertising of the Product, thereby causing harm to the Plaintiff and members of the Class;

g. Whether Defendant's Product is defective, thereby causing harm to Plaintiff and members of the Class;

h. Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury; and

i. Whether Defendant failed to adequately warn of, and/or concealed the dangers and health risks associated with the Product.

27.    The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class, as the claims arise from the same course of conduct by Defendant, and the relief sought is common.

28.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

29.    Certification of this class action is appropriate under FRCP 23(b) and California Code of Civil Procedure §382 because the questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims.

30.    Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class would be able to protect their own interests

because the cost of litigation through individual lawsuits might exceed expected recovery.

31.     Certification is also appropriate because Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

32.     Furthermore, given the large number of consumers of the Product, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

33.     A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender.

34.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## VI. FIRST CAUSE OF ACTION:

## FOR VIOLATION OF BUS & PROF. CODE § 17200 ET SEQ.

35.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

36.     This cause of action is brought on behalf of Plaintiff and members of the general public pursuant to Cal. Bus. & Prof. Code § et seq., which provides that "unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section ) as Part of Division of the Business and Professions Code."

37.     Plaintiff alleges on information and belief that Defendant committed unfair

business acts and/or practices. Defendant and its related entities represent themselves as being reputable, reliable and safe manufacturers of dietary supplements. However, the utility of Defendant's practices related to the design, testing, manufacture, assembly, development, marketing, advertising and labeling of the Product for the purpose of selling it, and Defendant's inadequate Product warning and dosage recommendation, is negligible, if any, when weighed against the harm to the general public, Plaintiff and Members of the Class.

38.     The harmful impact upon members of the general public and the Class who purchased and used the Product for its intended and foreseeable purpose far outweighs any reasons or justifications by Defendant for these practices, set forth in detail above. Defendant had and has an improper motive (profit before safety) in its practices related to the design, testing, manufacture, assembly, development, marketing, advertising and labeling of the Product, as well as in Defendant's inadequate Product warning and dosage recommendation, as set forth in detail above.

39.     The utilization of such unfair business acts and practices was and is under the sole control of Defendant, and is deceptively hidden from members of the general public in its labeling, advertising, promotion and/or marketing of the Product, as well as by the inadequate Product warning and dosage recommendation.

40.     As a purchaser and consumer of Defendant's Product, and as a member of the general public in California who purchased the Product and used it for its intended and foreseeable purpose, Plaintiff is entitled to and does bring this class action seeking all available remedies under the UCL, including declaratory, injunctive and other equitable relief, as well as attorneys' fees and costs.

41.     Defendant committed a deceptive act or practice by failing to make known the risks inherent in the design, testing, manufacture, assembly, sale and use of the Product as set forth in detail above, and by making marketing, advertising and/or labeling representations that deceptively promoted the Product as having approved and unique drug-quality properties. These acts and practices have a capacity, tendency,

and/or likelihood to deceive or confuse reasonable consumers in that such consumers had a good faith basis for believing the Product was designed, tested, manufactured, assembled and developed in a safe and reliable manner consistent with the standards of Defendant's industry and that it had approved and unique drug-quality properties.

42.     Defendant's practices related to the design, testing, manufacture, assembly, development, marketing, advertising and/or labeling of the Product for the purpose of selling its Product, as well as its inadequate Product warning and dosage recommendation, as set forth in detail above, constitute unfair and/or deceptive business practices within the meaning of California Bus. & Prof. Code § et seq. Plaintiff and members of the general public were and are likely to be deceived by Defendant as set forth herein.

43.     Pursuant to California Bus. & Prof. Code § 17203, Plaintiff, on behalf of himself and members of the general public, seeks an order of this Court:

      a.  Enjoining Defendant from continuing to engage, use, or employ unfair and/or deceptive business acts or practices related to the marketing, advertising, labeling and sale of the Product for the purpose of selling its Product in such manner as set forth in detail above; and

      b.  Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices.

44.     Plaintiff and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. The unfair and/or deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff and members of the general public.

45.     As a result of Defendant's violation of the UCL, Plaintiff and the Class are entitled to restitution for out-of-pocket expenses and economic harm. Pursuant to Civil Code § 3287(a), Plaintiff and Members of the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct. The amount of damages suffered as a result is a sum certain and capable of calculation and Plaintiff and

Members of the Class are entitled to interest in an amount according to proof.

## VII. SECOND CAUSE OF ACTION:

### FOR VIOLATIONS OF BUS. & PROF. CODE §17500 ET SEQ.

46.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

47.    In violation of California Bus. & Prof. Code §17500, Defendant has disseminated, or caused to be disseminated, deceptive representations: that promote the Product as a safe and healthy dietary supplement that enhances energy and causes weight loss, but minimize, and fail to adequately warn the public of, the dangers and health risks associated with use of the Product or the proper dosage; and that promote the Product as having approved and unique drug-quality properties.

48.    Defendant's representations made in the advertising, labeling and/or marketing of the Product is misleading as set forth above.

49.    Defendant continues to disseminate, or causes to be disseminated, such misleading statements alleged herein.

50.    Defendant's representations regarding the Product are by their very nature unfair, deceptive and/or misleading within the meaning of California Bus. & Prof. Code §17500 et seq. The representations are likely to deceive, and continue to deceive, reasonable consumers.

51.    In making and disseminating the representations alleged herein, Defendant knew or should have known that the statements were misleading, and acted in violation of California's Bus. & Prof. Code §17500 et seq.

52.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the Class Members have suffered substantial monetary and non-monetary damage.

53.    Pursuant to Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and members of the general public, seeks an order of this Court:

    a. Enjoining Defendant from continuing to engage, use, or employ deceptive acts and/or practices related to the marketing, advertising and sale of the

Product for the purpose of selling its Product in such manner as set forth in detail above; and

   b. Restoring all monies that may have been acquired by Defendant as a result of such deceptive acts and/or practices.

54.   As a result of Defendant's violations of the FAL, Plaintiff and the Class are entitled to restitution for out-of-pocket expenses and economic harm. Pursuant to Civil Code § 3287(a), Plaintiff and Members of the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct. The amount of damages suffered as a result is a sum certain and capable of calculation, and Plaintiff and Members of the Class are entitled to interest in an amount according to proof.

## VIII. THIRD CAUSE OF ACTION:

## FRAUDULENT CONCEALMENT

55.   Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

56.   Plaintiff alleges on information and belief that Defendant suppressed facts regarding the dangers and health risks associated with use of the Product, as well as the purported approved and unique drug-quality properties of the Product, and has done so for the purpose of selling the Product in such manner as set forth in detail above.

57.   Defendant was bound to disclose the truth about these matters, as set forth in detail above, but has failed to do so.

58.   Defendant alleges on information and belief that Defendant concealed these facts when it knew the true and correct facts regarding the Product, and that it took steps to prevent these facts from becoming known to the general public in the advertising, marketing, promotion and/or sale of the Product.

59.   The concealment of the true facts from Plaintiff and Members of the Class was done with the intent to induce them to purchase the Product.

60.   The reliance by Plaintiff and Members of the Class was reasonable and justified in that Defendant appeared to be, and presented itself as, a reputable business.

61.     Plaintiff and Members of the Class would not have purchased the Product and used it had they known the true facts about the Product.

62.     As a direct and proximate result of the fraud and deceit alleged, Plaintiff and Members of the Class have suffered actual damages in an amount to be determined at trial in that they were induced to a product they would not have purchased had they known the true facts about it, and they have spent money on a product that is not what it was represented to be, and that lacks the value Defendant represented the Product had, which was reflected in the purchase price.

63.     Plaintiff is informed and believes, and thereon alleges, that Defendant knew of the dangers and health risks associated with use of the Product set forth in detail above, and that it was making claims that the Product has approved and unique drug-quality properties when the Product is not generally recognized for those purposes as set forth above. Plaintiff also alleges on information and belief that Defendant intended that customers and the unknowing public should rely on Defendant's representations that the Product is a safe dietary supplement, and its claims that the Product has approved and unique drug-quality properties, as well as Defendant's suppression of the true facts about the Product, in buying the Product.

64.     Plaintiff and other members of the general public, in purchasing and using the Product as herein alleged, did rely on Defendant's above representations and suppression of facts, all to their damage as hereinabove alleged. In doing these things, Defendant was guilty of malice, oppression and fraud, and plaintiff and Members of the Class are, therefore, entitled to recover punitive damages.

### IX. FOURTH CAUSE OF ACTION:

### FOR BREACH OF IMPLIED WARRANTY OF FITNESS FOR PURPOSE

65.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

66.     Plaintiff and other Members of the Class sought an energy enhancing weight-loss product that was safe, healthy and effective. In doing so, Plaintiff and other

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES
Page 17 of 23

Members of the Class relied on Defendant's skill and judgment to select and furnish suitable goods for that purpose, and on or about that time, Defendant sold the Product to Plaintiff and other Members of the Class.

67.     By its representations regarding the reputable nature of its companies and related entities, and by its promotion and marketing of the Product, Defendant warranted that the Product was a safe and healthy energy enhancing weight-loss product that had approved and unique drug-quality properties. Plaintiff and Members of the Class bought the Product from Defendant, relying on Defendant's skill and judgment.

68.     However, Defendant's Product is not safe or healthy for use by consumers, has not qualified for marketing as drug as set forth above, and is not fit for human use and/or consumption, also as set forth in detail above.

69.     At the time of sale, Defendant had reason to know the particular purpose for which the goods were required, and that Plaintiff and Members of the Class were relying on Defendant's skill and judgment to select and furnish suitable and safe goods, so that there was an implied warranty that the goods were fit for this purpose.

70.     However, Defendant breached the warranty implied at the time of sale in that Plaintiff and Members of the Class did not receive suitable goods, and the goods were not fit for the particular purpose for which they were made, as set forth above.

71.     As a proximate result of this breach of warranty by Defendant, Plaintiff and Members of the Class have suffered actual damages in an amount to be determined at trial in that they were induced to a product they would not have purchased had they known the true facts about, and have spent money on a product that is not what it was represented to be, and that lacks the value Defendant represented the Product had, which was reflected in the purchase price.

## X. FIFTH CAUSE OF ACTION:

## BREACH OF EXPRESS WARRANTY

72.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

73.     Plaintiff is informed and believes and thereon alleges that Defendant made different express warranties, including but not limited to express warranties that the Product would be free from defects, would promote healthy weight loss and energy enhancement, would be safe for the consumer using it, and that it had approved and unique drug-quality properties.

74.     Plaintiff alleges on information and belief that Defendant has marketed the Product for use by consumers as set forth above, but that: the Product is not safe; Defendant has failed to adequately warn of the dangers and health risks associated with use of the Product, as well as the proper dosage; and that the Product has not met the requirements for marketing the Product as a drug.

75.     These acts Product constitute breaches of all applicable express and implied warranties as alleged in this Complaint, based on all laws that support the breach of express warranty claims by Plaintiff and other members of the Class. These laws include but are not limited to the Common Law, the California Uniform Commercial Code and California Civil Code section 1790, et seq. (California Song Beverly Act).

76.     As a proximate result of the failure of the Product to perform as expressly warranted by Defendant, Plaintiff and Members of the Class have suffered actual damages in an amount to be determined at trial in that they were induced to a product they would not have purchased had they known the true facts about, and have spent money on a product that is not what it was represented to be, and that lacks the value Defendant represented the Product had, which was reflected in the purchase price.

77.     Plaintiff gave timely notice to Defendant of this breach on behalf of themselves and all members of Plaintiff's Class prior to the filing of this Complaint.

78.     Plaintiff cannot return the Product to Defendant for repair as the defect is irreparable.

## XI. SIXTH CAUSE OF ACTION:
## FOR NEGLIGENCE

79.     Plaintiff realleges and incorporates by reference the allegations set forth in

each of the preceding paragraphs of this Complaint.

80.     Defendant owed Plaintiff and Members of the Class a duty to offer for sale in the stream of commerce a safe dietary supplement for use by consumers, and to warn consumers of the dangers and health risks associated with use of the Product, as well as the proper dosage.

81.     Defendant breached this duty by offering and selling the Product, even though the design, testing, manufacture, assembly and development of the Product was and is negligent and/or defective, and by failing to take adequate precautions to ensure the safety of the Product and/or to warn consumers of the dangers and health risks associated with use of the Product, as well as the proper dosage.

82.     Though its breach and failure to exercise the due care owed to Plaintiff and Members of the Class, Defendant was negligent in producing, processing, manufacturing, offering for sale, and selling the Product to Plaintiff and Members of the Class.

83.     Defendant failed to use sufficient quality control, to do adequate testing, to perform proper manufacturing, production or processing, and/or failed to take sufficient measures to warn consumers of the dangers and health risks associated with the use of the Product, as well as its proper dosage, and to prevent the Product from being offered for sale, sold, or used by consumers in a dangerous and/or defective condition.

84.     Defendant knew or should have known that the Product presented an unacceptable risk to the health of Plaintiff and members of the general public, including Members of the Class, and that its use would result in harm that was foreseeable and reasonably avoidable. The loss, damage, and injuries were foreseeable.

85.     Defendant's breach of its duty and negligence proximately caused loss, damage, injury, and harm to Plaintiff and Members of the Class.

86.     As a proximate result of this breach of duty by Defendant, Plaintiff and Members of the Class have suffered actual damages in an amount to be determined at trial in that they have spent money on a product that lacks the value Defendant represented the Product had, which was reflected in the purchase price of the Product.

## XII. SEVENTH CAUSE OF ACTION:

## STRICT PRODUCT LIABILITY - DEFECT IN DESIGN OR MANUFACTURE

87.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

88.     Defendant sold the Product, which is defective and unreasonably dangerous, to Plaintiff and Members of the Class as set forth in detail above. Defendant's Product is manufactured, sold, distributed, supplied, marketed and promoted by Defendant, and is expected to reach, and did reach, Plaintiff and members of the Class without substantial change in the condition it was and is manufactured, distributed and sold by Defendant.

89.     The Product was and is manufactured, distributed and sold by Defendant, and was and is defective in design and/or formulation in that when the Product leaves the hands of Defendant and/or sellers, it is unreasonably dangerous in that its foreseeable risks exceed the benefits associated with the design and/or formulation of the Product.

90.     Upon information and belief, Plaintiff alleges that Defendant actually knew of the defective nature of the Product, but continued to design, manufacture, and market and sell it so as to maximize profits at the expense of public health and safety in conscious disregard of the foreseeable harm caused by the Product.

91.     At all times relevant to this action, the Product was designed, tested, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendant in a defective and unreasonably dangerous condition in ways which include, but are not limited to, the following:

    a. When placed in the stream of commerce, the Product contains unreasonably dangerous design defects and is not reasonably safe and fit for its reasonably foreseeable purpose, or as it is intended to be used, thereby subjecting Plaintiff and the Class to risks which exceeded the benefits of the Product;

b. The Product was insufficiently tested;

c. The Product created and creates serious health risks and harm, all outweighing any potential utility of the Product; and

d. In light of the potential risk and harm associated with the use of the Product by consumers, a reasonable person who had actual knowledge of this potential risk or harm would have concluded that the Product should not have been marketed, distributed or sold in that condition.

92. At all times relevant to this action, the Product was designed, tested, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold packaged, supplied and/or distributed by Defendant and was expected to reach, and did reach purchasers of the Product, including plaintiff and Members of the Class, without substantial change in the defective and unreasonably dangerous condition in which it was and is sold.

93. At all times, plaintiff and members of the Class purchased the Product for its intended and reasonably foreseeable purpose.

94. As a direct and proximate result of the defective and unreasonably dangerous condition of the Product, Plaintiff and Members of the Class have suffered actual damages in an amount to be determined at trial in that they have spent money on a product that is not what it was represented to be, and that lacks the value Defendant represented the Product had, which was reflected in the purchase price.

95. Plaintiff is informed and believes and thereon alleges that Defendant knew that the Product was defective and unreasonably dangerous, and that Defendant intended that customers and the unknowing public should continue to purchase and use the Product. In doing these things, Defendant was guilty of malice, oppression, and fraud, and Plaintiff and Members of the Class are, therefore, entitled to recover punitive damages in an amount sufficient to deter such behavior in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated,

prays for relief, jointly and severally pursuant to each cause of action set forth in this Complaint as follows:

1. For an order certifying that the action may be maintained as a class action;

2. For an award of equitable relief as follows:

   a. Enjoining Defendant from continuing to engage, use, or employ unfair and/or deceptive business acts or practices related to the marketing, advertising, promotion and labeling of the Product for the purpose of selling its Product in such manner as set forth in detail above; and

   b. Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices; and

3. For an award of attorney's fees pursuant to, inter alia, Code of Civil Procedure § 1021.5;

4. For actual damages in an amount to be determined at trial;

5. For punitive damages in an amount to be determined at trial for the Third and Seventh Causes of Action;

6. For an award of costs and any other award the Court might deem appropriate; and

7. For pre- and post-judgment interest on any amounts awarded.

HEWELL LAW FIRM

Dated: June 18, 2009            By: _____
                                    Harold M. Hewell

Howard Rubinstein
Attorney at Law
914 Waters Avenue, Suite 20
Aspen, Colorado 81611
(*To seek pro hac vice admission*)

*Attorneys for Plaintiff*

Exhibit "A"

## WARNING LETTER

President/Owner
ThermoLife International
767 Industrial Rd.
San Carlos, California  94070

Ref:  02-HFD-312-07

Dear Sir or Madam:

This letter is written in reference to your firm's marketing of the product Lipodryl II, which, according to your Internet web site, http://www.thermolife.com, contains, among other ingredients, 1R, 2S norephedrine HCL  Statements made on your Internet web site, indicate that this product is intended to be thermogenic and help "burn" fat.

This product cannot be marketed as a dietary supplement because the norephedrine HCl used in the product appears to be a synthetic compound that is not derived from any botanical source. Synthetic norephedrine HCl is not plant-derived and cannot, therefore, be considered a constituent or extract of a botanical source.  Consequently, FDA has determined that synthetic ephedrine alkaloids are not "dietary ingredients" as defined in the Federal Food, Drug and Cosmetic Act [the Act, Section 201 (ff)(1)]. Therefore, products containing synthetic ephedrine alkaloids do not fall under the dietary supplement regulatory scheme.

Based on its intended uses, to affect the structure or function of the body, this product is a drug within the meaning of Section 201(g) of the Act. Such products are considered drugs when their intended use is established by structure/function claims, such as those that appear on your web site. Some of the claims on your Internet web site, http://www.thermolife.com, from which this product may be ordered, state, for example, "…most effective thermogenic fat burner…stimulate the release of brown fat…".

As a drug, the labeling claims made for this product subject it to the requirements for new drugs [Section 201(p) of the Act] because there is no evidence that this product is generally recognized as safe and effective for its claimed uses.  Under Section 505(a) of the Act, a "new drug" may not be introduced or delivered for introduction into interstate commerce unless an FDA-approved new drug application is in effect for such drug. Because your product is not the subject of an approved NDA, it may not be marketed in the United States and its continued distribution violates Section 505 of the Act.

Page 2 - ThermoLife International

This letter is not intended to be an all-inclusive review of your Internet web site nor all labeling and products your firm markets.  The violation of the Act described above is not intended to be an all-inclusive list of violations concerning your firm and its products. It is your responsibility to ensure that all products marketed by your firm, including other synthetic ephedrine alkaloid products, are in compliance with the Act and its implementing regulations.

We request that you take prompt action to correct these violations.  Failure to promptly correct violations may result in enforcement action being initiated by the FDA without further notice.  The Act provides for the seizure of illegal products and for injunction against the manufacturer and/or distributor of illegal products.

Please notify this office within fifteen (15) working days of receipt of this letter as to the specific steps you have taken to correct the stated violations.  You should also include an explanation of each step being taken to identify and make corrections to assure that similar violations will not recur.  If corrective action cannot be completed within 15 working days, state the reason for the delay and the time within which the corrections will be implemented.

Your reply should be sent to the attention of Ms. Vesna Stanoyevitch, Compliance Officer, at the Food and Drug Administration, Center For Drug Evaluation and Research, Office of Compliance (HFD-310), Metropark North I, 7520 Standish Place, Rockville, MD 20855.

Sincerely yours,

David J. Horowitz, Esq.
Acting Director
Office of Compliance
Center for Drug Evaluation and Research
Food and Drug Administration

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ZACK AARONSON, as an individual and on behalf of all others similarly situated, | VITAL PHARMACEUTICALS, INC, a Florida corporation, doing business under the trademark VPX FILED 09 JUN 19 PM 4: 31 |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  San Diego, CA (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY)   SOUTHERN DISTRICT OF CALIFORNIA |
|---|---|
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED    DEPUTY |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Harold M. Hewell, Hewell Law Firm 105 West F St., 2nd Fl., San Diego, CA 92101 Tel: (619) 235-6854 · Fax: (888) 298-0177 ·Email: hmhewell@hewell-lawfirm.com | '09 CV 1 333 W        CAB |

| II. BASIS OF JURISDICTION | III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX (For Diversity Cases Only) AND ONE BOX FOR DEFENDANT) |
|---|---|

| | PT DEF | | PT DEF |
|---|---|---|---|
| • 1U.S. Government Plaintiff | • 3Federal Question (U.S. Government Not a Party) | Citizen of This State  X 1  • 1 | Incorporated or Principal Place of Business in This State  • 4  • 4 |
| • 2U.S. Government Defendant | X 4Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State  • 2  • 2 | Incorporated and Principal Place of Business in Another State  • 5  X |
| | | Citizen or Subject of a Foreign Country  • 3  • 3 | Foreign Nation  • 6  • 6 |

IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).
Common law and California statutory causes of action arising from unfair and deceptive business practices, as well as product liability. Diversity jurisdiction under Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119. Stat. 4 (2005)

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| • 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | • 610 Agriculture | • 422 Appeal 28 USC 158 | • 400 State Reapportionment |
| • 120 Marine | • 310 Airplane | • 362 Personal Injury- Medical Malpractice | • 620 Other Food & Drug | • 423 Withdrawal 28 USC 157 | • 410 Antitrust |
| • 130 Miller Act | • 315 Airplane Product Liability | • 365 Personal Injury - Product Liability | • 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | • 430 Banks and Banking |
| • 140 Negotiable Instrument | • 320 Assault, Libel & Slander | | • 630 Liquor Laws | • 820 Copyrights | • 450 Commerce/ICC Rates/etc. |
| • 150 Recovery of Overpayment &Enforcement of Judgment | • 330 Federal Employers' Liability | • 368 Asbestos Personal Injury Product Liability | • 640 RR & Truck | • 830 Patent | • 460 Deportation |
| • 151 Medicare Act | • 340 Marine | **PERSONAL PROPERTY** | • 650 Airline Regs | • 840 Trademark | • 470 Racketeer Influenced and Corrupt Organizations |
| • 152 Recovery of Defaulted Student Loans (Excl. Veterans) | • 345 Marine Product Liability | X 370 Other Fraud | • 660 Occupational Safety/Health | **SOCIAL SECURITY** | • 810 Selective Service |
| • 153Recovery of Overpayment of Veterans Benefits | • 350 Motor Vehicle | • 371 Truth in Lending | • 690 Other | • 861 HIA (1395ff) | • 850 Securities/Commodities Exchange |
| • 160 Stockholders Suits | • 355 Motor Vehicle Product Liability | • 380 Other Personal Property Damage | **LABOR** | • 862 Black Lung (923) | • 875 Customer Challenge 12 USC |
| • 190 Other Contract | • 360 Other Personal Injury | • 385 Property Damage Product Liability | • 710Fair Labor Standards Act | • 863 DIWC/DIWW (405(g)) | • 891 Agricultural Acts |
| • 195 Contract Product Liability | | | • 720 Labor/Mgmt. Relations | • 864 SSID Title XVI | • 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | • 730 Labor/Mgmt. Reporting & Disclosure Act | • 865 RSI (405(g)) | • 893 Environmental Matters |
| • 210 Land Condemnation | • 441 Voting | • 510 Motions to Vacate Sentence Habeas Corpus | • 740 Railway Labor Act | **FEDERAL TAX SUITS** | • 894 Energy Allocation Act |
| • 220 Foreclosure | • 442 Employment | | • 790 Other Labor Litigation | • 870 Taxes (U.S. Plaintiff or Defendant) | • 895 Freedom of Information Act |
| • 230 Rent Lease & Ejectment | • 443 Housing/Accommodations | • 530 General | • 791 Empl. Ret. Inc. Security Act | • 871 IRS - Third Party 26 USC 7609 | • 900 Appeal of Fee Determination Under Equal Access to Justice |
| • 240 Tort to Land | • 444 Welfare | • 535 Death Penalty | | | • 950 Constitutionality of State |
| • 245 Tort Product Liability | • 440 Other Civil Rights | • 540 Mandamus & Other | | | • 890 Other Statutory Actions |
| • 290 All Other Real Property | | • 550 Civil Rights | | | |
| | | • 555 Prisoner Conditions | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

X 1 Original Proceeding  • 2 Removal from State Court  • 3 Remanded from Appellate Court  • 4 Reinstated or Reopened  • 5 Transferred from another district (specify)  • 6 Multidistrict Litigation  • 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | X CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $ Exceeds $5,000,000, plus equitable relief | Check YES only if demanded in complaint: JURY DEMAND X YES • NO |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY (See Instructions): | JUDGE | | Docket Number |
|---|---|---|---|
| DATE 6/18/09 | | SIGNATURE OF ATTORNEY OF RECORD | |

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

6/19/09

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44**

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should completed the form as follows:

I.(a) Plaintiffs - Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giveing both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved).

(c) Attorneys. Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place the "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, it officers or agencies, place an X in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

V. Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action , in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

VI. Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

VII. Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. Related Cases. This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.
(rev. 07/89)

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS002184
Cashier ID: sramirez
Transaction Date: 06/19/2009
Payer Name: CENTRAL ATTY. SVCS.
-----------------------------------
CIVIL FILING FEE
 For: AARONSON V. VITAL
 Case/Party: D-CAS-3-09-CV-001333-001
 Amount:        $350.00
-----------------------------------
CHECK
 Check/Money Order Num: 11437
 Amt Tendered:  $350.00
-----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.